**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| ALAN HALL AND JAMES DEPALMA, | § § § |
| PLAINTIFFS, | § § |
| v. | § § |
| RENT-A-CENTER, INC., ROBERT D. DAVIS, AND GUY J. CONSTANT, | § § § |
| DEFENDANTS. | § § |

CIVIL NO. 4:16-CV-00978-ALM-CMC

**LEAD PLAINTIFF'S UNOPPOSED MOTION AND SUPPORTING**
**MEMORANDUM OF LAW FOR PRELIMINARY APPROVAL OF**
**<u>CLASS ACTION SETTLEMENT</u>**

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT OF ISSUES TO BE DECIDED ................................ 1

HISTORY OF THE LITIGATION ............................................................................ 2

THE PROPOSED SETTLEMENT ............................................................................ 4

ARGUMENT ............................................................................................................ 5

I.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................. 5

 A.  The Settlement Is the Result of Thorough and Arm's-Length Efforts by Adequate Representatives ....................................................................... 7

 B.  The Relief Provided by the Settlement Is Adequate and Well Within the Range of Reasonableness ......................................................................... 9

 C.  The Settlement Treats All Class Members Fairly and Does Not Improperly Grant Preferential Treatment to Lead Plaintiff or any Segment of the Settlement Class ..................................................................................... 13

 D.  The Settlement Does Not Excessively Compensate Lead Counsel ...................... 16

II.  THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS ................................................................................................................ 17

 A.  Standards Applicable to Class Certification ........................................... 17

 B.  The Settlement Class Meets the Requirements of Rule 23(a) ........................... 18

  1.  Rule 23(a): Numerosity ................................................................ 18

  2.  Rule 23(a)(2):  Questions of Law or Fact Are Common ...................... 19

  3.  Rule 23(a)(3): Lead Plaintiff's Claims Are Typical ............................ 19

  4.  Rule 23(a)(4):  The Lead Plaintiff Is Adequate ................................. 19

 C.  The Settlement Class Meets the Requirements of Rule 23(b)(3) ........................ 20

  1.  Common Questions of Law or Fact Predominate ............................... 20

  2.  A Class Action Is a Superior Method of Adjudication ......................... 22

III.  THE PROPOSED NOTICE PLAN AND FORMS SHOULD BE APPROVED ............. 23

IV.	PROPOSED SCHEDULE OF EVENTS .......................................................................... 25

V.	CONCLUSION ........................................................................................................... 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States,*
    406 U.S. 128 (1972)...................................................................................................22

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)......................................................................................17, 18, 20

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds,*
    568 U.S. 455 (2013)..............................................................................................21, 21

*Basic v. Levinson,*
    485 U.S. 224 (1988)...................................................................................................22

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.,*
    No. 07-Civ-10453, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) .................................20

*Billitteri v. Sec. Am., Inc.,*
    No. ML 10-2145 DOC, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ....................7

*In re Cobalt Int'l Energy, Inc. Sec. Litig.,*
    No. 14-cv-3428, 2017 WL 2608243 (S.D. Tex. June 15, 2017)..............................18

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ...................................................................................5

*Di Giacomo v. Plains All Am. Pipeline,*
    No. Civ.A.H.-99-4137, Civ.A.H-99-4212, 2001 WL 34633373
    (S.D. Tex. Dec. 19, 2001) .........................................................................................16

*In re Dynegy, Inc. Sec. Litig.,*
    226 F.R.D. 263 (S.D. Tex. 2005) .............................................................................19

*In re Elec. Data Sys. Corp. Sec. Litig.,*
    226 F.R.D. 559 (E.D. Tex. 2005) *aff'd, Feder v. Elec. Data Sys. Corp.,* 429
    F.3d 125 (5th Cir. 2005) ..........................................................................................21

*Erica P. John Fund, Inc.* v. *Halliburton Co.,*
    563 U.S. 804 (2011)..................................................................................................21

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.,*
    4 F. Supp. 3d 94 (D.D.C. 2013) ..............................................................................10

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................7

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    No. 09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) .........................10

*In re Katrina Canal Breaches Litig.*,
    628 F.3d 185 (5th Cir. 2010) ............................................................23

*Marcus v. J.C. Penney Co.*,
    No. 13-cv-736, 2016 WL 8604331 (E.D. Tex. Aug. 29, 2016) ..................................... *passim*

*Marcus v. J.C. Penney Co.*,
    No. 13-cv-736, 2017 WL 907996 (E.D. Tex. Mar. 8, 2017) ............................................17, 18

*McNamara v. Bre-X Minerals, Ltd.*,
    214 F.R.D. 424 (E.D. Tex. 2002) ............................................................1, 6

*McPhail v. First Command Fin. Planning, Inc.*,
    No. 05-cv-179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ...............................10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ............................................................23

*Newby v. Enron Corp.*,
    394 F.3d 296 (5th Cir. 2004) ............................................................6

*In re OCA Inc. Sec. and Derivative Litig.*
    No. 05-2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008) ............................................7, 9, 16, 16

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015) ............................................................12

*In re Omnivision Tech. Inc.*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................10, 11

*In re Pool Prods. Distrib. Mktg. Antitrust Litig.*,
    310 F.R.D 300 (E.D. La. 2015) ............................................................9

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ............................................................6

*Schwartz v. TXU Corp.*,
    No. 02 cv 2243, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ..................................16, 23, 25

*Slipchenko v. Brunel Energy, Inc.*,
    Civil Action No. H-11-1465, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ...........................11

**Docketed Cases**

*In re Bank of New York Mellon Forex Transactions Litig.*,
    No. 12-md-2335-LAK (S.D.N.Y.)................................................................25

*In re KBR, Inc. Sec. Litig.*,
    No. 14-cv-01287 (S.D. Tex.) ...................................................................25

*In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*,
    No. 08-cv-2177 (D.N.J.) ...........................................................................25

*In re Schering-Plough Corp. ENHANCE Sec. Litig.*
    No. 08-397 (D.N.J..) .................................................................................25

**Statutes**

15 U.S.C. § 78u-4(a)(4) ........................................................................................13

15 U.S.C. §78u-4(a)(7)(A)-(F)............................................................................24

15 U.S.C. § 78u-4(e) .............................................................................................14

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................2

Fed. R. Civ. P. 23(a) ............................................................................................17

Fed. R. Civ. P. 23(a)(1) .......................................................................................18

Fed. R. Civ. P. 23(a)(2) .......................................................................................19

Fed. R. Civ. P. 23(a)(3) .......................................................................................19

Fed. R. Civ. P. 23(a)(4) ..................................................................................19, 20

Fed. R. Civ. P. 23(b) ............................................................................................17

Fed. R. Civ. P. 23(b)(3)...........................................................................18, 20, 21, 22

Fed. R. Civ. P. 23(b)(3)(A)-(D).........................................................................22

Fed. R. Civ. P. 23(c)(2) .......................................................................................23

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................23

Fed. R. Civ. P. 23(e) ......................................................................................1, 2, 6

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................................6

Fed. R. Civ. P. 23(e)(2).............................................................................................6

Fed. R. Civ. P. 23(f)................................................................................................13

Fed. R. Civ. P. 23(g)(1)...........................................................................................20

**Other Authority**

William B. Rubenstein, Newberg on Class Action (5th ed. 2015)......................................5, 6, 17

Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters" or "Lead Plaintiff"), on behalf of itself, and additional named plaintiff City of Hollywood Employees' Retirement Fund ("Hollywood ERF," together with Lead Plaintiff, "Plaintiffs"), and all other members of the Settlement Class, respectfully submits this unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Parties' agreed-upon proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order"), which is filed herewith.[1]

## PRELIMINARY STATEMENT OF ISSUES TO BE DECIDED

The Parties have reached a proposed settlement of this securities class action (the "Action") for a total of $11,000,000 in cash (the "Settlement") that, if approved by the Court, will resolve all claims asserted against Defendants in the Action.  Lead Plaintiff now requests that the Court preliminarily approve the proposed Settlement.   As explained herein, Lead Plaintiff respectfully submits that the Settlement warrants preliminary approval given that it is the result of vigorous arm's-length negotiations by experienced counsel overseen by a well-respected Mediator, represents a favorable recovery that falls well within the range of possible approval, and is very likely to meet all of the approval factors required by Fed. R. Civ. P. 23(e)(amended) and Fifth Circuit precedent.   Preliminary approval is, therefore, appropriate. *See, e.g.*, *McNamara v. Bre-X Minerals, Ltd.*, 214 F.R.D. 424, 430 (E.D. Tex. 2002) ("[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other deficiencies . . . and appears to fall within the range of possible approval, the court

---

[1] All capitalized terms that are not otherwise defined herein shall have the same meaning as those provided in the Stipulation and Agreement of Settlement, dated December 3, 2018 (the "Stipulation"), filed concurrently herewith as Exhibit A to the Declaration of Jonathan Gardner ("Gardner Decl.").  All exhibits referenced below are attached to the Gardner Declaration.

should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing . . .").

Entry of the proposed Preliminary Approval Order will begin the process of considering final approval of the proposed Settlement by authorizing notice of the Settlement's terms and conditions to be sent to investors who are believed to be members of the Settlement Class.  A final approval hearing (the "Settlement Hearing") will then be conducted so that the Parties and Settlement Class Members may present arguments and evidence for and against the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate.

To facilitate this process, the proposed Preliminary Approval Order will, among other things:  (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) approve the form and content of the Notice, Claim Form, and Summary Notice attached as Exhibits 1, 2 and 3 to the Preliminary Approval Order; (iii) find that the procedures for distribution of the Notice and Claim Form and publication of the Summary Notice provided in the Preliminary Approval Order constitute the best notice practicable under the circumstances and comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (v) set a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses, including reimbursement of costs and expenses (including lost wages) to Plaintiffs pursuant to the PSLRA.

## HISTORY OF THE LITIGATION

Plaintiffs allege that Rent-A-Center, Inc. ("RAC," "Rent-A-Center," or the "Company") and the Individual Defendants violated the federal securities laws by making a number of materially false and misleading statements regarding the Company's new point-of-sale ("POS")

information management system, also referred to as the Store Information Management System ("SIMS"). Defendants allegedly failed to disclose that SIMS had a history of ongoing stability and functionality problems, which jeopardized a number of Company initiatives that depended on its successful Companywide implementation.  Plaintiffs further allege that the price of RAC's publicly traded common stock was artificially inflated during the Class Period as a result of Defendants' alleged materially false and misleading statements and omissions, and Plaintiffs allege the stock price declined when the truth was revealed.

This securities fraud class action was commenced with the filing of a complaint on December 23, 2016.  ECF No. 1.  Following briefing, and pursuant to the PSLRA, the Court entered an Order appointing Oklahoma Firefighters as Lead Plaintiff for the proposed class, and approving Lead Plaintiff's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel on March 16, 2017.  ECF No. 34.

The operative complaint in the Action is the Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws ("Complaint"), filed on May 5, 2017.  ECF No. 42.  The Complaint named additional plaintiff Hollywood ERF.  On June 5, 2017, the Defendants filed a motion to dismiss the Complaint, which Plaintiffs opposed on July 5, 2017. ECF Nos. 44, 45.   On July 19, 2017, Defendants filed a reply brief in further support of their motion to dismiss, and Plaintiffs filed a sur-reply in support of their opposition on August 2, 2017.  ECF Nos. 46, 47.  On October 19, 2017, Magistrate Judge Caroline Craven issued an Amended Report and Recommendation (the "R&R"), recommending that the Court deny Defendants' motion to dismiss.  ECF No. 51.  On December 14, 2017, following further briefing on the R&R, the Court adopted Judge Craven's recommendation, thereby denying Defendants' motion to dismiss.  ECF No. 63.

On behalf of the class, Lead Counsel conducted a thorough and far reaching investigation to support the allegations in the Complaint.  This process has included analyzing:  (i) documents filed publicly by the Company with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; (v) approximately 420,000 pages of documents, including emails of the Individual Defendants, produced by Defendants and third parties; and (vi) the applicable law governing the claims and potential defenses.  Lead Counsel identified approximately 181 former Rent-A-Center employees and other persons with relevant knowledge and interviewed 26 of them, and consulted with experts on damages and accounting issues.  In connection with class certification, the Parties also took or defended the depositions of representatives from each Plaintiff, two of Plaintiffs' investment managers, and the Parties' respective market efficiency and price impact experts.

On March 14, 2018, Plaintiffs moved for class certification, (ECF No. 75), which Defendants opposed on May 14, 2018, (ECF No. 78).  The motion was pending when the Parties agreed to settle the Action.

## THE PROPOSED SETTLEMENT

In an effort to explore the possibility of a negotiated resolution of the claims in the Action, the parties engaged the Honorable Layn R. Phillips (Ret.) ("Judge Phillips"), a well-respected and highly experienced mediator.  On August 8, 2018, Lead Plaintiff and Defendants met with Judge Phillips in an attempt to reach a settlement.  The mediation involved an extended effort to settle the claims and was preceded by the exchange of mediation statements, however a settlement was not reached.  Thereafter, discussions continued and ultimately an agreement in

principle to settle was reached on September 13, 2018 and a term sheet was executed on October 8, 2018.

The Parties subsequently negotiated the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action, and related claims, in return for a cash payment on behalf of Defendants of $11,000,000 for the benefit of the Settlement Class.[2]

In light of the significant benefit achieved for the Settlement Class, the substantial costs and risks of continuing litigation through summary judgment, trial and appeals, and the fact that the proposed Settlement is the result of arm's-length negotiations by experienced counsel overseen by a well-respected mediator, it is respectfully submitted that the Settlement warrants preliminary approval so that notice can be provided to the Settlement Class.

## ARGUMENT

## I.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Courts have long recognized a strong policy and presumption in favor of class action settlements. *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (noting an "overriding public interest in favor of settlement," "[p]articularly in class action suits"). District court review of a class action settlement proposal is a two-step process. Newberg on Class

---

[2] In connection with the Settlement, the Parties have also entered into the Confidential Supplemental Agreement Regarding Requests for Exclusion, dated December 3, 2018 ("Supplemental Agreement"). *See* Stipulation ¶ 40.  The Supplemental Agreement sets forth the conditions under which RAC has the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon criteria stated in the Supplemental Agreement (the "Termination Threshold").  As is standard practice in securities class actions, the Supplemental Agreement is not made public in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Termination Threshold to exact an individual settlement.  Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.

The Supplemental Agreement, Stipulation, and term sheet are the only agreements concerning the Settlement entered into by the Parties.

Actions §13:12 (5th ed. 2015).  The first step is a preliminary, pre-notification determination of whether "notice of the proposed settlement should be sent to the class." *Id.* at §13:13.  In the first step, the Court makes a preliminary evaluation of the fairness of the settlement before directing that notice be given to the class. Effective December 1, 2018, Rule 23(e) was amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the likelihood that the court will be able to finally approve the settlement and certify the class.  Rule 23(e)(1)(B).[3]

A court will ordinarily grant preliminary approval where, as here, "the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval." *Id.; see also McNamara,* 214 F.R.D. at  430 ("[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other deficiencies . . . and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing . . .").

Lead Plaintiff requests that the Court take the first step in the settlement approval process and grant preliminary approval.  As summarized below, and as will be detailed further in a

---

[3] In connection with final approval of the Settlement, the Court will be asked to review the following core factors identified by amended Rule 23(e)(2), whether: (a) Lead Plaintiff and Lead Counsel adequately represented the class; (b) the Settlement was negotiated at arm's-length; (c) the relief provided to the class is adequate; and (d) the proposal treats class members equitably relative to each other.  In assessing these core factors, the Court may also consider the Fifth Circuit's long-standing approval factors, many of which overlap with the Rule 23 factors:  (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members."  *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *see also Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004).

subsequent motion for final approval of the Settlement, this Settlement is more than likely to meet all of the factors required for final approval and, therefore, warrants preliminary approval.

A.    **The Settlement Is the Result of Thorough and Arm's-Length Efforts by Adequate Representatives**

There can be no doubt that the Settlement was fairly and honestly negotiated by vigorous and adequate advocates for the Settlement Class, namely Lead Plaintiff and Lead Counsel. Courts have long-recognized that "a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012); *In re OCA Inc. Sec. and Derivative Litig.* No. 05-2165, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008) (finding no obvious deficiencies where parties arrived at the agreement after mediation sessions with Judge Weinstein and where the parties engaged in extensive discovery); *Billitteri v. Sec. Am., Inc.*, No. ML 10-2145 DOC (RNBx), 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ("settlement… diligently negotiated after a long and hard-fought process that culminated in ultimately successful mediation…").

As noted above, Lead Plaintiff vigorously investigated the Action since its inception two years ago and the Settlement was achieved only after diligent arm's-length mediated negotiations between counsel with considerable knowledge and expertise in the field of federal securities law, including securities fraud class actions under the Securities Exchange Act.  As part of those discussions, Lead Counsel and Defendants' Counsel prepared and presented submissions concerning their respective views regarding the merits of the litigation, including the evidence adduced during the course of discovery, Defendants' defenses, and issues related to class-wide damages. Counsel and the Mediator engaged in a full-day, in-person mediation session on

August 8, 2018, followed by a month of additional discussions, until eventually agreeing in principle to settle the Action on September 13, 2018.  The Parties signed a term sheet on October 8, 2018, and then worked over the subsequent weeks to finalize the terms of the Stipulation on December 3, 2018.

Moreover, the Parties reached the Settlement only after vigorously litigating, conducting discovery, and consulting with experts. As noted above, Lead Plaintiff conducted an extensive investigation prior to filing the Complaint, which included interviews with 26 former RAC employees and other persons with relevant knowledge and a thorough review of publicly available information; successfully opposed Defendants' motion to dismiss; moved for class certification; analyzed approximately 420,000 pages of documents produced by Defendants and third-parties; defended the depositions of Plaintiffs' representatives and participated in the depositions of Plaintiffs' investment managers; took and defended the Parties' respective market efficiency and price impact experts; and consulted with experts on damages, loss causation, and accounting issues.  As a result, Lead Plaintiff and Lead Counsel had a well-grounded basis for assessing the strengths and weakness of the Settlement Class's claims and Defendants' defenses when they agreed to settle the Action.

During these efforts, the Settlement Class was well-represented by Lead Plaintiff Oklahoma Firefighters Pension and Retirement System, which is a very sophisticated institutional investor that provides retirement, disability, and survivor benefits to retirees and manages approximately $2.5 billion in assets for those beneficiaries.  *See, e.g.,* ECF No. 76-1.  It has been appointed lead plaintiff in numerous securities class actions and purchased approximately 55,000 shares of RAC common stock during the Class Period.  *See* ECF No. 11-1.

Additionally, throughout the Action, Lead Plaintiff had the benefit of the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases.  Labaton Sucharow is among the most experienced and skilled firms in the securities litigation field, and has a long and successful track record in such cases.  *See* Ex. B.  Labaton Sucharow has served as lead counsel in a number of high profile matters.  *See, e.g.*, *In re Am. Int'l Grp, Inc. Sec. Litig.*, No. 04-cv-8141 (S.D.N.Y.) ($1 billion recovery); *In re HealthSouth Corp. Sec. Litig.*,  No. 03-cv-1500 (N.D. Ala.) ($600 million recovery); and *In re Countrywide Sec. Litig.*, No. 07-cv-5295 (C.D. Cal.) ($600 million recovery).

Accordingly, the Settlement is a product of informed, fair, and honest negotiations among sophisticated parties and experienced counsel, following extensive discovery, and is deserving of preliminary approval. *See, e.g., In re OCA, Inc. Sec. & Derivative Litig.*, 2008 WL 4681369, at *11 (preliminarily approving settlement reached after three years of litigation and discovery); *In re Pool Prods. Distrib. Mktg. Antitrust Litig.*, 310 F.R.D 300, 315 (E.D. La. 2015) (same).

### B.     The Relief Provided by the Settlement Is Adequate and Well Within the Range of Reasonableness

Defendants have agreed to settle this Action for $11,000,000.  This Settlement is well within the range of reasonableness for several reasons.

First, the Settlement presents a very favorable recovery when compared to the median settlement value in securities class action settlements in 2017, which was reported by Cornerstone Research to be $5 million.  *See*, Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons, Securities Class Action Settlements – 2017 Review and Analysis, at 3 (Cornerstone Research 2018), attached as Ex. C to the Gardner Declaration.

Second, Lead Plaintiff's damages expert has estimated that if liability were established with respect to all of claims throughout the Class Period, maximum aggregate damages

recoverable at trial, based on non-disaggregated stock price declines on all the disclosures dates, would be approximately $148 million to $219 million, depending upon whether pre-Class Period gains were considered and removed.   Importantly, these maximum estimates assume that Plaintiffs would be able to prove damages based on all alleged corrective disclosures and that they would not need to disaggregate, or parse out, confounding non-fraud related information on those dates.   It is likely that Defendants would have argued that confounding news was released on the corrective disclosure dates and that Plaintiffs bore the burden of proof to parse out of the effect of that confounding information.   Plaintiffs' damages expert also performed a preliminary disaggregation analysis to remove the effects of potentially confounding information which could have reduced the damages to $95 million to $126 million.   Accordingly, the Settlement recovers approximately 5.0% to 7.4% of maximum damages and 8.7% to 11.6% of disaggregated damages.

Since the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), courts have approved settlements that recovered a similar, or smaller, percentage of maximum damages.   *See, e.g., In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 103 (D.D.C. 2013) (settlement value approximating "4-8% of the best case scenario potential recovery" deemed reasonable); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No.  09-cv-00419-MMD-WGC, 2012 WL 5199742, at *2-3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering about 3.5% of the maximum damages that plaintiffs believe could be recovered at trial and noting that the amount is within the median recovery in securities class actions settled in the last few years); *McPhail v. First Command Fin. Planning, Inc.*, No. 05-cv-179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate); *In*

*re Omnivision Tech. Inc.* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements")(citation omitted).

Had the case proceeded, Defendants would have strenuously argued for the exclusion of each of the alleged corrective disclosures on the grounds that Plaintiffs could not sufficiently link each to Defendants' alleged fraud, *i.e.,* they were not corrective at all. For instance, when the Company allegedly disclosed the status of the SIMS rollout and its impact on RAC's financials beginning in February 2016 through the end of the Class Period, these statements, according to Defendants, did not correct any prior announcements reporting on the number of stores in which SIMS was currently operating. Defendants would have further argued that Plaintiffs cannot establish loss causation through stock price increases following any of the alleged misrepresentations. If these arguments prevailed at class certification, summary judgment, or trial, the Settlement Class could have recovered significantly less or, indeed, nothing.

Third, in evaluating whether the Settlement Amount falls within the range of reasonableness, the court should consider "whether the settlement's terms fall within a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits." *Slipchenko v. Brunel Energy, Inc*., Civil Action No. H-11-1465, 2015 WL 338358, at *11 (S.D. Tex. Jan. 23, 2015) (citation omitted). Although Lead Plaintiff and Lead Counsel believe the claims to be strong, they acknowledge that Defendants advance several substantial arguments concerning liability and damages. Indeed, even though the Court sustained the claims alleged in the Complaint, pursuing the Settlement Class' claims through contested class certification, summary judgment, trial, and appeals would pose significant risks and uncertainty.

With respect to liability, Plaintiffs would have faced significant hurdles in proving falsity and materiality.  For instance, Defendants vigorously maintained that (i) they appropriately informed investors about the development and roll out of SIMS; (ii) Plaintiffs would not be able to satisfy the *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318 (2015) standard with respect to the Company's statements in 2016, which Defendants argued were mostly opinion statements; (iii) the computer system outages which occurred at the end of the Class Period had nothing to do with the issues the system had experienced earlier, thus, earlier statements were not false; and (iv) Defendants had no duty to disclose the difficulties sooner than they did.

Also, Plaintiffs would have faced meaningful challenges in proving that Defendants acted with the required intent to defraud or severe recklessness necessary to establish Defendants' scienter.  Specifically, Defendants argued and would have continued to argue, among other things, that:  (i) the Individual Defendants did not profit from the alleged fraud by selling stock and the Company did not use its stock as currency, potentially undermining Plaintiffs' allegations of scienter in the eyes of a jury; (ii) Defendants did not rush a rollout of SIMS to avoid writing off the cost of developing the system, which would not even have been required under Generally Accepted Accounting Principles; and (iii) Plaintiffs could not marshal sufficient evidence that Defendants had knowledge that their statements about SIMS were not true at the time they were made.

Furthermore, even if the hurdles to establishing liability were overcome, Plaintiffs would have confronted significant challenges in establishing loss causation and damages, as mentioned above.  Had any of these arguments been accepted, in whole or part, they would have dramatically limited any potential recovery.

Lastly, in order to succeed, Plaintiffs would have had to prevail at multiple additional stages in the litigation – in connection with the class certification motion (and in a likely petition pursuant to Rule 23(f) even once certified), a motion for summary judgment, at trial and, even if Plaintiffs prevailed on those, in an appeal that would inevitably follow.  At each of these stages, there would be significant risks attendant to the continued prosecution of the Action, and there was no guarantee that further litigation, which would have involved significant expense and delay, would have resulted in a higher recovery, or any recovery at all.

The Settlement avoids all of these risks and achieves a prompt and substantial recovery without the need for prolonged and uncertain litigation.

### C. The Settlement Treats All Class Members Fairly and Does Not Improperly Grant Preferential Treatment to Lead Plaintiff or any Segment of the Settlement Class

The Settlement does not improperly grant preferential treatment to either Lead Plaintiff or any segment of the Settlement Class.  Rather, all members of the Settlement Class, including Plaintiffs, will receive a distribution from the Net Settlement Fund pursuant to a Plan of Allocation approved by the Court.[4]

At the final Settlement Hearing, the Court will be asked to approve the proposed Plan of Allocation for the Net Settlement Fund, which is set forth in full in the Notice and was prepared by Lead Counsel with the assistance of a consulting damages expert.  Here, the proposed Plan of

---

[4] In connection with Lead Counsel's application for an award of attorneys' fees and litigation expenses, Plaintiffs may seek reimbursement of their reasonable costs and expenses (including lost wages) directly related to their participation in the Action.  Reimbursement of Plaintiffs' costs and expenses is explicitly contemplated by the PSLRA and would not constitute preferential treatment.  *See* 15 U.S.C. § 78u-4(a)(4) (limiting a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also providing that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class").

13

Allocation is based on Plaintiffs' allegations that the price of RAC common stock was artificially inflated during the Class Period as a result of Defendants' alleged materially false and misleading statements and omissions, and that the inflation was removed in reaction to a series of public disclosures that partially corrected the alleged misrepresentations and omissions.  The Plan of Allocation is designed to equitably distribute the Settlement proceeds among the members of the Settlement Class who were allegedly injured by Defendants' alleged misrepresentations and who submit valid Claim Forms that are approved for payment.  The Plan provides for the calculation of a "Recognized Loss" amount for each properly documented purchase or acquisition of RAC common stock during the Class Period.  A claimant's total Recognized Losses will depend on, among other things, when their shares were purchased and/or sold during the Class Period in relation to the disclosure dates alleged in the Action, whether the shares were held through or sold during the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e) (providing methodology for limiting damages in securities fraud actions), and the value of the shares when they were sold or held.

The Recognized Loss formulas are tied to liability and damages.  In developing the Plan of Allocation, the Lead Plaintiff's damages expert considered the amount of artificial inflation allegedly present in RAC's common stock throughout the Class Period that was purportedly caused by the alleged fraud. An inflation table was created and is reported in the Notice as part of the Plan of Allocation.  The table will be utilized by the Claims Administrator in calculating Recognized Loss amounts for claimants.

The Claims Administrator will calculate claimants' Recognized Losses using the transactional information provided by claimants in their claim forms, which can be mailed to the Claims Administrator, submitted online using the settlement website, or for large investors with

hundreds of transactions, via e-mail to the Claims Administrator's electronic filing team. Because most securities are held in "street name" by the brokers that buy them on behalf of clients, the Claims Administrator, Lead Counsel, and Defendants do not have Settlement Class Members' transactional data and a claims process is required.  Because the Settlement does not recover 100% of alleged damages, the Claims Administrator will determine each eligible claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's total "Recognized Claim" compared to the aggregate Recognized Claims of all eligible claimants.

Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, distributions will be made to eligible claimants in the form of checks and wire transfers.  After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution, Lead Counsel will, if feasible and economical, re-distribute the balance among eligible claimants who have cashed their checks.  These re-distributions will be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute.  *See* Stipulation ¶ 26.  Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of any outstanding Notice and Administration Expenses or Taxes, will be donated to a non-sectarian, not-for-profit charitable organization serving the public interest designated by Lead Plaintiff and approved by the Court. *Id*.

Accordingly, for the foregoing reasons, it is respectfully submitted that the proposed Settlement treats all Settlement Class Members fairly and equitably and is deserving of preliminary approval.

### D.    The Settlement Does Not Excessively Compensate Lead Counsel

The proposed Settlement does not grant excessive compensation to Lead Counsel.  As an initial matter, the reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for attorneys' fees and expenses.  *See In re OCA*, 2008 WL 4681369, at *14 (explaining that "[a]t the final approval stage the court will apply applicable federal standards to determine [whether to approve attorneys' fees)"].  The Settlement does not contemplate any specific award to Lead Counsel and Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Defendants.

In connection with Lead Counsel's Fee and Expense Application, Lead Counsel will seek no more than 25% of the Settlement Fund, an amount that is well-within the percentages that courts in the Fifth Circuit approve in securities class actions with comparable recoveries.  *See, e.g.*, *Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H.-99-4137, Civ.A.H-99-4212, 2001 WL 34633373, at *9 (S.D. Tex. Dec. 19, 2001) (awarding attorneys' fees of 30% of $29.5 million settlement); *In re OCA*, 2008 WL 4681369, at *19-20 (awarding attorneys' fees of 28% of $6.5 million settlement and noting that in "securities cases involving funds in the $5 million to $10 range, attorneys' fees are generally within the 25 to 33 1/3 percent range"); *see also Schwartz v. TXU Corp.*, 02 cv 2243, 2005 WL 3148350, at *27 (N.D. Tex. Nov. 8, 2005) ("courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method") (citation omitted). Counsel will also seek payment of litigation expenses incurred during the prosecution of the Action, in an amount not to exceed $440,000.

## II.   THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

### A.   Standards Applicable to Class Certification

At the Settlement Hearing, the Court will be asked to grant final approval of the Settlement on behalf of the Settlement Class, which is defined as "all persons and entities that purchased or otherwise acquired Rent-A-Center, Inc. publicly-traded common stock during the period from February 2, 2015 through October 10, 2016, inclusive and who were allegedly damaged thereby," excluding those expressly identified in ¶ 1(kk) of the Stipulation.[5]  For that reason, and pursuant to the recent amendments to Rule 23(e), it is appropriate for the Court to consider, at the preliminary approval stage, whether certification of the Settlement Class is appropriate.

Courts have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Indeed, "actions under the federal securities laws are particularly well suited for representative litigation under Rule 23." William B. Rubenstein, Newberg on Class Actions § 22:82 (5th ed. 2017).

A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b). *See Marcus v. J.C. Penney Co.,* No. 13-cv-736, 2016 WL 8604331, at *1 (E.D. Tex. Aug. 29, 2016), *report and recommendation adopted in full*, No. 13 cv 736, 2017 WL

---

[5] Excluded from the Settlement Class are: (i) Defendants Rent-A-Center, Inc., Robert D. Davis, and Guy J. Constant; (ii) members of the immediate families of the Individual Defendants; (iii) any person who was an officer or director of the Company during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) the Company's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person or entity.  Any person and entity that timely and validly seeks exclusion from the Settlement Class pursuant to the Preliminary Approval Order will also be excluded.  The Settlement Class is consistent with the definition of the class proposed in Plaintiffs' motion for class certification, *see generally* ECF Nos. 75-76, 89-90.

907996 (E.D. Tex. Mar. 8, 2017) (certifying class in securities fraud action).  Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class.  *See Amchem Prods.*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").  As discussed below, *see also* ECF Nos. 75-76, 89-90, the Action satisfies all the factors for certification.

**B.      The Settlement Class Meets the Requirements of Rule 23(a)**

**1.      Rule 23(a): Numerosity**

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable.  Numerosity is "generally assumed to have been met in class action suits involving nationally traded securities." *Marcus*, 2016 WL 8604331, at *2. Courts are "quite willing to accept common sense assumptions in order to support findings of numerosity." *Id.*  In *Marcus*, numerosity was established where there were between 27,000 and 28,000 shareholders during the class period, the Company's stock traded on the New York Stock Exchange, and the individuals or entities that traded in the stock were likely to be located nationwide. *Id.*

Here, there can be no dispute that the Settlement Class satisfies numerosity and consists of thousands of investors. Throughout the Class Period, RAC's common stock traded on the NASDAQ, a national securities exchange; during the Class Period, RAC had more than 53 million shares outstanding, 51.5 million of which were held by non-affiliates – more than 97%; and the average weekly trading volume during the Class Period was 4.7 million shares.  *See* ECF Nos. 75, 76-3. Thus, there are likely thousands of class members who purchased RAC common stock at artificially inflated prices making joinder impracticable. *Id.*; *see also*, *e.g.*, *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. 14-cv-3428, 2017 WL 2608243, at *2 (S.D. Tex. June 15, 2017) (certifying class and determining numerosity established where over 350 million shares were held during the class period).

18

### 2.      Rule 23(a)(2):  Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The threshold for commonality is not high," and "is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Marcus*, 2016 WL 8604331, at *3. Although there are none here, even the presence of some individualized claims by some plaintiffs would not defeat commonality. *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 269 (S.D. Tex. 2005).

In this case, common questions of both law and fact abound.  The central questions– whether Defendants' public statements during the Class Period regarding the roll-out and implementation of SIMS were false and misleading, whether Defendants acted with the requisite mental state, and whether the prices of RAC's common stock were artificially inflated–are the same for all class members.  *See also* ECF No. 75 at 4.

### 3.      Rule 23(a)(3): Lead Plaintiff's Claims Are Typical

Rule 23(a)(3) is satisfied where the claims of the proposed class representative arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory. *Marcus,* 2016 WL 8604331, at *3.  "Like commonality, the test for typicality is not demanding. The critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class."  *Id.*

Here, Lead Plaintiff's claims are typical to those of the other Members of the Settlement Class.  Like all Settlement Class Members, Lead Plaintiff purchased the publicly traded common stock of RAC during the Class Period and claims to have suffered damages when Defendants' alleged material misstatements and omissions were revealed.

### 4.      Rule 23(a)(4):  The Lead Plaintiff Is Adequate

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect

the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry encompasses the class representatives, their counsel, and the relationship between the two, and "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Marcus*, 2016 WL 8604331, at *3; *see also* ECF No. 75 at 6-7.

Here, as mentioned above, Lead Plaintiff is a sophisticated institutional investor that has and will continue to represent the interests of the Settlement Class fairly and adequately. *See also* ECF Nos. 75, 76-1. There is no antagonism or conflict of interest between Lead Plaintiff and the proposed Settlement Class. Lead Plaintiff and Members of the Settlement Class share the common objective of maximizing their recovery from Defendants when considering the totality of the relevant circumstances. Lead Counsel also has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States.[6] Lead Counsel is well qualified and able to conduct the Action and has ably and effectively represented Lead Plaintiff and the proposed Settlement Class throughout the Action.[7]

### C.    The Settlement Class Meets the Requirements of Rule 23(b)(3)

#### 1.    Common Questions of Law or Fact Predominate

Rule 23(b)(3) sets forth two requirements, the first being that the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. In evaluating predominance, the Court's inquiry "must be rigorous and may entail some

---

[6] *See* Lead Counsel's Firm Resume (Ex. B); *see also In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 07-Civ-10453, 2009 WL 50132, at *10 (S.D.N.Y. Jan. 5, 2009) (stating that Labaton Sucharow has "substantial experience in the prosecution of shareholder and securities class actions").

[7] Accordingly, Lead Counsel should also be appointed as Class Counsel for the Settlement Class under Rule 23(g)(1). *See, e.g.*, *Marcus,* 2016 WL 8604331, at *10.

overlap with the merits of the [P]laintiffs' underlying claim," but the Court may not "engage in free-ranging merits inquiries at the class certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013); *Marcus*, 2016 WL 8604331, at *4.  In this case, as is generally so in securities class actions, each element of Plaintiffs' 10(b) claim involves common questions of law and fact that predominate over individualized issues.  Indeed, "predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of antitrust laws."  *In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 570 (E.D. Tex. 2005) *aff'd, Feder v. Elec. Data Sys. Corp.* 429 F.3d 125 (5th Cir. 2005).

Here, common questions of law and fact predominate over individual questions because Defendants' alleged fraudulent statements and omissions affected all Settlement Class Members in the same manner (i.e., through public statements made to the market and documents publicly filed with the SEC).  Materiality "is an objective [question], involving the significance of an omitted or misrepresented fact to a reasonable investor," thus "can be proved through evidence common to the class" and "is a common question for purposes of Rule 23(b)(3)." *Amgen*, 568 U.S. at 467. The same is the case for loss causation, scienter, and falsity. *Erica P. John Fund, Inc.* v. *Halliburton Co.*, 563 U.S. 804, 812 (2011) ("*Halliburton I*") (loss causation "requires a plaintiff to show that a misrepresentation that affected the integrity of the market price *also* caused a subsequent economic loss," but need not be shown at the class certification stage) (emphasis in original); *Elec. Data Sys.*, 226 F.R.D. at 570 ("Here, the liability issues turn upon whether Defendants made materially false and misleading statements with the required scienter…. If Defendants are liable to [plaintiff] for these statements, they are liable to all other class members for the same statements, so common questions predominate").

Plaintiffs contend that reliance is established in this Action through the application of

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because claims asserted against Defendants are predicated upon omissions of material fact, which there was a duty to disclose, or the "fraud-on-the-market" presumption of reliance in *Basic v. Levinson*, 485 U.S. 224, 241-42 (1988).  Application of *Affiliated Ute* or *Basic* dispenses with the requirement that each Settlement Class Member prove individual reliance on Defendants' alleged misstatements and/or omissions.  *See id.* at 241-42.  In order to be entitled the *Basic* presumption of reliance, the market for the security must be "efficient."  *Id.* at 248.  Here, where RAC's common stock is traded on the NASDAQ, a national securities exchange, and was followed by numerous securities analysts and traded at regular substantial volumes, there is sufficient evidence of market efficiency.  *See* ECF Nos. 75 at 7-13; 76-3.

### 2. A Class Action Is a Superior Method of Adjudication

Finally, Rule 23(b)(3) also requires that the action be superior to other available methods for the fair and efficient adjudication of the controversy.  The rule lists several matters pertinent to this finding: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Marcus,* 2016 WL 8604331, at *10.  Each factor weighs in favor of superiority here.  Indeed, Lead Counsel is not aware of any individual class member interested in bringing its own action against Defendants for securities fraud.  Further, without the settlement class device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to enter into the Settlement.  Certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.

Accordingly, for all the foregoing reasons, and those previously briefed before the Court, it is respectfully requested that the Court preliminarily certify the Settlement Class, for settlement purposes only.

## III.   THE PROPOSED NOTICE PLAN AND FORMS SHOULD BE APPROVED

The proposed Notice and Summary Notice, attached as Exhibits 1 and 3 to the proposed Preliminary Approval Order, respectively, satisfy due process, the federal rules and the PSLRA. Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2). It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Due process is satisfied if the notice provides class members with the "information reasonably necessary for them to make a decision whether to object to the settlement." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010).

Collectively, the proposed forms of notice here describe, *inter alia*, (i) the terms of the Settlement and the recovery; (ii) the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable to all Settlement Class Members; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Settlement Class and objecting to the Settlement; (v) the procedure for submitting a claim; (vi) the proposed Plan of Allocation for distributing the settlement proceeds to the Settlement Class; and (vii) the date, time and place of the Settlement Hearing. *See Schwartz,* 2005 WL 3148350, at *11 (approving notice that provides class members with relevant information regarding how the settlement fund will be allocated, the right of class members to exclude themselves from the settlement class and to object to the settlement; and the date of the fairness hearing, among other things).   The Notice also satisfies the PSLRA's

separate requirements by, *inter alia,* stating*:* (i) the amount of the Settlement determined in the aggregate and on an average per share basis;[8] (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Lead Counsel intends to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) the name, telephone number, and address of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement.  15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed notice program uses the "gold standard" method in securities cases for notifying class members: individual notification by mail, publication in a national newspaper focusing on investors, and dissemination over the internet using a wire service.  Upon entry of the Preliminary Approval Order, the Claims Administrator will mail the Notice and Claim Form to all Class Members who can be identified and located through reasonable effort, using information provided by RAC's transfer agent, as well as information provided by third party banks, brokers, and other nominees about their customers who may have eligible purchases.[9] Lead Counsel will also cause the Summary Notice to be published in *The Wall Street Journal* and be transmitted over the internet using *PR Newswire*.  In addition, the Notice and Claim Form will be made available for viewing and downloading on the settlement website and Lead Counsel's website.  The manner of providing notice, *i.e.*, individual notice by mail supplemented

---

[8] As reported in the Notice, the average recovery per allegedly damaged share of the common stock of RAC would be $0.23 per share before deduction of Court-approved fees and expenses, such as attorneys' fees and expenses, and approximately $0.16 per share after deduction of attorneys' fees and expenses.  These values are averages and individual recoveries will differ, depending upon when they made purchase or sales, and whether they held their shares.

[9] Because of the availability of name and address data for potential class members from third-parties, and the Claims Administrator's ability to reach class members through individual mailed notice, Lead Counsel and the Claims Administrator have conferred and determined that using social media outreach would not be necessary here.  It is also the case that RAC's transfer agent and the majority of nominees are unlikely to have e-mail addresses for potential class members or, if they have them, would be unwilling to provide them given privacy concerns.

by additional publication and internet notice, represents the best notice practicable under the circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process.  *See, e.g.*, *Schwartz,* 2005 WL 3148350, at *11 (finding notice by publication and mail was appropriate).

Lead Plaintiff also requests that the Court appoint Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator to provide all notices approved by the Court to Class Members, to process Claim Forms, and to administer the Settlement.  Epiq is a nationally recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements, including *In re Schering-Plough Corp./ENHANCE Securities Litigation*, No. 08-cv-397 (D.N.J.) ($473 million settlement), *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*, No. 08-cv-2177 (D.N.J.) ($215 million settlement), *In re Bank of New York Mellon Forex Transactions Litigation*, No. 12-md-2335-LAK (S.D.N.Y.) ($180 million settlement), and *In re KBR Securities Litigation*, No. 14-cv-1287 (S.D. Tex.) ($10.5 million settlement); *see* Gardner Decl. Ex. D.

## IV.    PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff respectfully proposes the following schedule for the Court's review and approval, which summarizes the deadlines in the proposed Preliminary Approval Order.  If the Court agrees with the proposed schedule, Lead Plaintiff requests that the Court schedule the Settlement Hearing for a date 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| | |
|---|---|
| Deadline for mailing individual Notices and Claim Forms (the "Notice Date") | *12 business days after entry of Preliminary Approval Order.* |
| Deadline for publication in *The Wall Street Journal* and transmission over *PR Newswire* | *Within 14 calendar days of the Notice Date.* |

| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Lead Counsel's application for fees and expenses | *No later than 35 calendar days before the Settlement Hearing.* |
|---|---|
| Deadline for submission of requests for exclusion or objections | *Received no later than 21 calendar days before the Settlement Hearing.* |
| Deadline for filing reply papers in support of the motions | *No later than 7 calendar days before the Settlement Hearing.* |
| Settlement Hearing | *At the Court's convenience, but no fewer than 120 calendar days after the entry of the Preliminary Approval Order.* |
| Deadline for submission of Claim Forms | *Postmarked or received no later than 120 calendar days after the Notice Date.* |

## V.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to Class Members; (iii) appoint Epiq as Claims Administrator; (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters, and grant such other and further relief as may be required.

Dated: December 4, 2018                         By: */s/ Jonathan Gardner*

Jonathan Gardner (*pro hac vice*)
Marisa N. DeMato (*pro hac vice*)
Christine M. Fox (*pro hac vice*)
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jgardner@labaton.com
mdemato@labaton.com
cfox@labaton.com

*Lead Counsel for Oklahoma Firefighters*
*Pension and Retirement System, City of*
*Hollywood Employees' Retirement Fund, and the*
*Proposed Class*

**HICKS DAVIS WYNN, PC**
Pamela C. Hicks
State Bar No. 24007002
Scott R. Davis
State Bar No. 24059660
3700 Buffalo Speedway, Ste. 520
Houston, Texas 77098
Telephone: 713-589-2240
gbuell@hdwlegal.com
phicks@hdwlegal.com
sdavis@hdwlegal.com

*Liaison Counsel for Oklahoma Firefighters*
*Pension and Retirement System, City of*
*Hollywood Employees' Retirement Fund, and the*
*Proposed Class*

**CERTIFICATE OF SERVICE**

I certify that on December 4, 2018, I electronically filed the above Lead Plaintiff's

Unopposed Motion and Supporting Memorandum of Law for Preliminary Approval of Class

Action Settlement, including all Exhibits thereto, using the Court's CM/ECF system, which will

be sent electronically to the registered participants as identified on the attached Electronic Mail

Notice List.


*/s/ Jonathan Gardner*
Jonathan Gardner

**Mailing Information for a Case 4:16-cv-00978-ALM-KPJ**

*Hall v. Rent-A-Center, Inc. et al*

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Christine M Fox**
  cfox@labaton.com,acarpio@labaton.com
- **Barry C Barnett**
  bbarnett@susmangodfrey.com,kpotts@susmangodfrey.com,ecf-
  0949b38b345a@ecf.pacerpro.com,ecf-e82efbe3cf6a@ecf.pacerpro.com
- **Eric J Belfi**
  ebelfi@labaton.com,drogers@labaton.com,lmehringer@labaton.com,jalayo@labaton.co
  m,electroniccasefiling@labaton.com
- **Willie Charles Briscoe**
  wbriscoe@thebriscoelawfirm.com,bthompson@thebriscoelawfirm.com
- **Guillaume Orson Buell**
  gbuell@hdwlegal.com,fwynn@hdwlegal.com,sdavis@hdwlegal.com,phicks@hdwlegal.c
  om,sbrown@hdwlegal.com
- **Marisa N DeMato**
  mdemato@labaton.com,fmalonzo@labaton.com
- **Jonathan Gardner**
  jgardner@labaton.com,lmehringer@labaton.com
- **Lionel Z Glancy**
  lglancy@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com
- **R. Dean Gresham**
  dean@stecklerlaw.com,tonja@stecklerlaw.com
- **Christopher Joseph Keller**
  ckeller@labaton.com,drogers@labaton.com,lmehringer@labaton.com,jalayo@labaton.co
  m,electroniccasefiling@labaton.com
- **Elton Joe Kendall**
  jkendall@kendalllawgroup.com,administrator@kendalllawgroup.com
- **Francis Paul McConville**
  fmcconville@labaton.com,drogers@labaton.com,lmehringer@labaton.com,jalayo@labat
  on.com,electroniccasefiling@labaton.com
- **Christopher L Mooney**
  cmooney@labaton.com,fmalonzo@labaton.com
- **Jessica B Pulliam**
  jessica.pulliam@bakerbotts.com,jessica-pulliam-
  3502@ecf.pacerpro.com,jeanne.delphenis@bakerbotts.com
- **David Dykeman Sterling**
  david.sterling@bakerbotts.com,leslie.buenzow@bakerbotts.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing).

• (No manual recipients)