# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| ALAN HALL AND JAMES DEPALMA, <br><br> PLAINTIFFS, <br><br> v. <br><br> RENT-A-CENTER, INC., ROBERT D. DAVIS, AND GUY J. CONSTANT, <br><br> DEFENDANTS. | § <br> § <br> § <br> § <br> §    CIVIL NO. 4:16-CV-00978-ALM-CMC <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

**LEAD COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND PAYMENT OF LITIGATION EXPENSES
AND SUPPORTING MEMORANDUM OF LAW**

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT OF REASONS SUPPORTING THE MOTION........................1

ARGUMENT .................................................................................................................4

I.     PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF
ATTORNEYS' FEES FROM THE COMMON FUND..................................................4

II.    THE REQUESTED ATTORNEYS' FEES WOULD BE REASONABLE
UNDER EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE
LODESTAR METHOD...................................................................................5

      A.     The Requested Attorneys' Fees Are Reasonable Applying the Percentage-
of-the-Fund Method .......................................................................5

      B.     The Requested Attorneys' Fees Are Reasonable Applying the Lodestar
Method ...................................................................................8

III.   THE FACTORS CONSIDERED BY COURTS WITHIN THE FIFTH CIRCUIT
SUPPORT THE REASONABLENESS OF THE REQUESTED FEE............................11

      A.     The *Johnson* Factors Support the Fairness and Reasonableness of the
Requested Fee .............................................................................12

            1.     The Time and Labor Required ...............................................12

            2.     The Novelty and Difficulty of the Issues....................................13

            3.     The Skill Required to Perform the Legal Services Properly, and the
Experience, Reputation and Ability of the Attorneys.............................15

            4.     The Preclusion of Other Employment .......................................16

            5.     The Customary Fee and Awards in Similar Cases....................................17

            6.     The Contingent Nature of the Fee...........................................17

            7.     The Amount Involved and the Results Achieved ....................................18

             8.     The Undesirability of the Case ..............................................19

      B.     Other Factors Considered by Courts Further Support the Requested Fee as
Fair and Reasonable........................................................................20

1.      Public Policy Considerations Support the Requested Fee ........................20

2.      Lead Plaintiff Has Approved the Requested Fee ....................................20

3.      The Reaction of the Settlement Class to Date Supports the
        Requested Fee ............................................................................21

IV.    THE REQUESTED EXPENSES ARE REASONABLE AND WERE
       NECESSARY TO ACHIEVE THE BENEFIT OBTAINED............................................21

V.     PLAINTIFFS REQUEST REASONABLE COSTS AND EXPENSES
       PURSUANT TO THE PSLRA ............................................................................23

CONCLUSION.............................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Anadarko Petroleum Corp. Class Action Litig.*,
 No. 4:12-CV-00900, 2014 WL 12599393 (S.D. Tex. Sept. 11, 2014) ....................................7

*Barton v. Drummond Co.*,
 636 F.2d 978 (5th Cir. 1981) ...................................................................................................4

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
 472 U.S. 299 (1985)...........................................................................................................5, 20

*Billitteri v. Sec. Am., Inc.*,
 No. 3:09-CV-01568-F, 2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) .......................12, 17, 19

*Blum v. Stenson*,
 465 U.S. 886 (1984).................................................................................................................5

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980).................................................................................................................4

*Braud v. Transp. Serv. Co. of Ill.*,
 No. 05-1898, 2010 WL 3283398 (E.D. La. Aug. 17, 2010) ....................................................19

*Burford v. Cargill, Inc.*,
 No. 05-0283, 2012 WL 5471985 (W.D. La. Nov. 8, 2012).....................................................17

*Camden I Condo. Ass'n v. Dunkle*,
 946 F.2d 768 (11th Cir. 1991) ...............................................................................................20

*DeHoyos v. Allstate Corp.*,
 240 F.R.D. 269 (W.D. Tex. 2007) ..........................................................................................10

*Di Giacomo v. Plains All Am. Pipeline*,
 No. Civ. A. H-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001)..................................7

*Dusek v. Mattel, Inc.*,
 Master File No. CV-99-10864-MRP, 2003 WL 27380800 (C.D. Cal. Sept. 29,
 2003) .....................................................................................................................................24

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
 586 F. Supp. 2d 732 (S.D. Tex. 2008) .....................................................................................9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .............................11

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...................................................................................9, 10

*Jenkins v. Trustmark Nat'l Bank*,
  300 F.R.D. 291 (S.D. Miss. 2014) ............................................................................................4, 20

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ..............................................................................................8, 12, 15

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010) ........................................................................................12

*Leroy v. City of Houston*,
  831 F.2d 576 (5th Cir. 1987) .........................................................................................................9

*In re Lucent Techs., Inc. Sec. Litig.*,
  327 F. Supp. 2d 426 (D.N.J. 2004) ..............................................................................................21

*Marcus v. J.C. Penney Co., Inc.*,
  No. 6:13-CV-736, 2017 WL 6590976 (E.D. Tex. Dec. 18, 2017) ..........................................6, 7

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)........................................................................................................................9

*In re OCA, Inc. Sec. & Derivative Litig.*,
  No. 05-2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) ...........................................7, 13, 18

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  135 S. Ct 1318 (2015)................................................................................................................3, 14

*Roussel v. Brinker Int'l, Inc.*,
  No. H-05-3733, 2010 WL 1881898 (S.D. Tex. Jan. 13, 2010), *aff'd,* 441 F.
  App'x. 222 (5th Cir. 2011) ...........................................................................................................18

*Schwartz v. TXU Corp.*,
  No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........................... *passim*

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
  91 F. Supp. 2d 942 (E.D. Tex. 2000)..............................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)....................................................................................................................5, 20

iv

*The Erica P. John Fund, Inc. v. Halliburton Co.*,
No. 3:02-cv-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ............................ *passim*

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ..................................................................................5, 8, 9, 12

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ...............................21

**Docketed Cases**

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
Lead Case No. 4:14-cv-3428 (NFA), slip op. (S.D. Tex. Feb. 13, 2019) ...............................7

*In re Conn's, Inc. Sec. Litig.*,
No. 4:14-cv-00548-KPE, slip op. (S.D. Tex. Oct. 11, 2018)...........................................10, 25

*In re KBR, Inc. Sec. Litig.*,
Case No. 4:14-cv-01287, slip op. (S.D. Tex. Aug. 24, 2017)...................................6, 7, 10, 25

*Miller v. Global Geophysical Servs., Inc.*,
Civil Action No. 14-cv-0708, slip op. (S.D. Tex. Jan. 14, 2016) ...........................................24

*Simons v. Dynacq Healthcare, Inc.*,
No. H-03-5825, slip op. (S.D. Tex. Jan. 10, 2007) ...............................................................25

*Singh v. 21Vianet Group Inc.*,
Case No. 2:14-cv-00894-JRG-RSP, slip op. (E.D. Tex. Dec. 6, 2018) ....................................6

*In re Tetra Techs., Inc. Sec. Litig.*,
No. 4:08-CV-00965, slip op. (S.D. Tex. Sept. 29, 2010) .......................................................25

*In re Willbros Group, Inc. Sec. Litig.*,
Master File No. 4:14-cv-03084-KPE, slip op. (S.D. Tex. Aug. 2, 2018) .............................6, 7

**Statutes**

15 U.S.C. §78u-4(a)(4) .....................................................................................................24

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995)....................21

Court-appointed Lead Counsel, Labaton Sucharow LLP ("Labaton Sucharow"), respectfully moves for an award of attorneys' fees on behalf of Plaintiffs' Counsel,[1] as well as payment of litigation expenses incurred by Plaintiffs' Counsel and the costs and expenses incurred by Plaintiffs in connection with litigating the claims in the above-captioned Action on behalf of the Settlement Class, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[2]

## PRELIMINARY STATEMENT OF REASONS SUPPORTING THE MOTION

Plaintiffs' Counsel have vigorously litigated this case for nearly two years on an entirely contingent basis against a tenacious and well-resourced defense. The $11 million proposed Settlement, if approved by the Court, represents a favorable outcome for the Settlement Class. The Settlement is particularly beneficial in light of the significant litigation risks present in this case. As discussed below, Defendants advanced powerful defenses to Plaintiffs' claims and there was considerable uncertainty throughout the case as to whether Plaintiffs would be able to achieve a meaningful recovery, if litigation continued.

---

[1] Plaintiffs' Counsel consist of Lead Counsel and Liaison Counsel, Hicks Davis Wynn, P.C.

[2] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated December 3, 2018 (the "Stipulation," ECF No. 117-1) (the "Stipulation") or in the Declaration of Jonathan Gardner in Support of (I) Motion for Approval of Class Action Settlement and Plan of Allocation and (II) Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses (the "Gardner Declaration" or "Gardner Decl."), filed herewith. Citations to "¶" in this memorandum refer to paragraphs in the Gardner Declaration. All exhibits herein are annexed to the Gardner Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Gardner Declaration and the second reference is to the exhibit designation within the exhibit itself.

All internal quotations and citations are omitted unless otherwise noted.

As detailed in the accompanying Gardner Declaration,[3] to achieve the recovery here, Lead Counsel devoted substantial resources to pursuing this litigation by, among other things: (i) conducting a thorough and wide-ranging factual investigation concerning the allegedly fraudulent misrepresentations made by Defendants, which included a careful review of publicly available information concerning Defendants and interviews with 26 confidential witnesses who were either former RAC employees or other persons with relevant knowledge; (ii) preparing and filing a detailed Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws (the "Complaint"); (iii) successfully opposing Defendants' motion to dismiss the Complaint; (iv) successfully opposing Defendants' objection to the Magistrate Judge's Amended Report and Recommendation, recommending that the Court deny Defendants' motion to dismiss the Complaint; (v) moving for class certification, which included the preparation of two expert reports; (vi) engaging in extensive fact discovery, which included Lead Counsel's analysis of approximately 420,000 pages of documents produced by Defendants and third-parties and taking or defending six depositions; and (vii) engaging in an extensive mediation process with the Honorable Layn R. Phillips (Ret.) ("Judge Phillips"), including preparing detailed mediation briefs, attending a full-day mediation, and participating in lengthy follow-up negotiations. *See generally* Gardner Decl.

Lead Counsel undertook these substantial efforts and achieved the proposed Settlement in the face of substantial litigation risks. For example, as explained in detail in the Gardner

---

[3] The Gardner Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and a description of the services Plaintiffs' Counsel provided for the benefit of the Settlement Class.

Declaration at ¶¶71-85 and summarized below, Plaintiffs faced substantial challenges in establishing Defendants' liability, particularly with respect to falsity of the alleged misstatements, scienter, as well as loss causation and damages.  Among other things, Defendants had argued strongly that: the alleged misstatements were truthful and non-actionable under the standards set forth in *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct 1318, 1332-33 (2015); neither of the Individual Defendants ever had any information that was contrary to the alleged misstatements; and that damages are much lower than Plaintiffs state, given that none of the alleged corrective disclosures were actually corrective of any alleged misleading statement, and that at the time of the alleged corrective disclosures, the Company also announced other negative news unrelated to the alleged fraud.  *Id*.

As compensation for their efforts on behalf of the Settlement Class, Lead Counsel requests a fee award in the amount of 25% of the Settlement Fund (*i.e.*, $2,750,000), payment of litigation expenses in the amount of $362,572.91, and reimbursement for Plaintiffs, pursuant to the PSLRA, in the aggregate amount of $5,090.00.  As discussed below, the requested fee is well within the range of fees awarded in comparable class action settlements in district courts within the Fifth Circuit.  Also, as discussed below, the requested fee would represent a fractional or "negative" multiplier of approximately 0.83 (83%) of Plaintiffs' Counsel's total lodestar (*i.e.*, the requested fee is less than the value of the time spent by Plaintiffs' Counsel in this litigation).

Lead Plaintiff, a sophisticated institutional investor, has endorsed the requested fees and expenses as fair and reasonable.  *See* Declaration of Chase Rankin on Behalf of Oklahoma Firefighters Pension and Retirement System, attached to the Gardner Decl. as Exhibit 1, at ¶6. Furthermore, the reaction of the Settlement Class to date further supports the request.  Pursuant

to the Court's Preliminary Approval Order (ECF No. 119), 31,071 copies of the Notice have been mailed to potential Settlement Class Members and nominees, and the Summary Notice was published in the *Wall Street Journal* and transmitted over the *PR Newswire*.  Ex. 3 at ¶¶10, 12. The Notice advised potential Settlement Class Members that Lead Counsel would seek fees up to 25% of the Settlement Fund and payment of litigation expenses in an amount not to exceed $440,000. *See* Ex. 3-A. While the April 12, 2019 deadline for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the attorneys' fees or expenses set forth in the Notice have been received.

For all the reasons set forth below, Lead Counsel respectfully requests that the Court approve its application for an award of attorneys' fees and expenses.

## ARGUMENT

### I.   PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

The Supreme Court and the Fifth Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981).  Courts recognize that awards of fair attorneys' fees from a common fund serve the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014) (citation omitted).

4

The Supreme Court has also emphasized that private securities actions, like this Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the U.S. Securities and Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action").

## II.     THE REQUESTED ATTORNEYS' FEES WOULD BE REASONABLE UNDER EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD

Fees awarded to counsel from a common fund can be determined by applying either the percentage-of-the-fund method or the lodestar method. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 644 (5th Cir. 2012) (district courts have "the flexibility to choose between the percentage and lodestar methods in common fund cases"). Under either method, the fee requested here would be fair and reasonable.

### A.     The Requested Attorneys' Fees Are Reasonable Applying the Percentage-of-the-Fund Method

The Supreme Court has endorsed the percentage method, stating that "under the 'common fund doctrine'. . . a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The Fifth Circuit has also approved of the percentage method, noting that it "brings certain advantages . . . because it allows for easy computation" and "aligns the interests of class counsel with those of the class members." *Dell*, 669 F.3d at 643 ("district courts in this Circuit regularly use the percentage method"); *see also Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *26 (N.D. Tex. Nov. 8,

2005) ("there is a strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery").

First, the requested fee of 25% is well within the range of percentage fees regularly awarded by district courts within the Fifth Circuit. *See. e.g., Marcus v. J.C. Penney Co., Inc.,* No. 6:13-CV-736, 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017), *report and recommendation adopted,* No. 6:13CV736, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018) (reasoning that "[i]t is not unusual for attorneys' fees awarded under the percentage method to range between 25% to 30% of the fund or more"); *Schwartz*, 2005 WL 3148350, at *27 (explaining that "courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method"); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("based on the opinions of other courts and the available studies of class action attorneys' fees awards . . . this Court concludes that attorneys' fees in the range from twenty-five percent (25%) to [33%] have been routinely awarded in class actions").

Second, a review of attorneys' fees awarded in class actions with comparably sized settlements within the Fifth Circuit strongly supports the reasonableness of the 25% fee request. *See e.g.*, *In re KBR, Inc. Sec. Litig.,* Case No. 4:14-cv-01287, slip op. at 2 (S.D. Tex. Aug. 24, 2017) (awarding fee of 25% of $10.5 million settlement) (Ex. 9);[4] *Singh v. 21Vianet Group Inc*., Case No. 2:14-cv-00894-JRG-RSP, slip op. at 2 (E.D. Tex. Dec. 6, 2018) (awarding fee of 33.3% of $9 million settlement) (Ex. 9); *In re Willbros Group, Inc. Sec. Litig.*, Master File No.

---

[4] All unreported slip opinions are submitted herewith in a compendium of cases attached as Exhibit 9 to the Gardner Declaration.

4:14-cv-03084-KPE, slip op. at 1 (S.D. Tex. Aug. 2, 2018) (awarding fee of 30% of $10 million settlement) (Ex. 9); *In re Anadarko Petroleum Corp. Class Action Litig.*, No. 4:12-CV-00900, 2014 WL 12599393, at *1 (S.D. Tex. Sept. 11, 2014) (awarding fee of 25% of $12.5 million settlement); *In re OCA, Inc. Sec. & Derivative Litig.,* No. 05-2165, 2009 WL 512081, at *25 (E.D. La. Mar. 2, 2009) (awarding fee of 28.5% of $6.5 million settlement); *Di Giacomo v. Plains All Am. Pipeline*, No. Civ. A. H-99-4137, 2001 WL 34633373, at *8-11 (S.D. Tex. Dec. 19, 2001) (awarding fee of 30% of $24.1 million settlement).

Fee awards of 25% or more are also often awarded by district courts within the Fifth Circuit in larger settlements as well.  *See, e.g.*, *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, Lead Case No. 4:14-cv-3428 (NFA), slip op. at 2 (S.D. Tex. Feb. 13, 2019) (awarding 25% of $173.8 million settlement); (Ex. 9) *The Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 WL 1942227, at *7 (N.D. Tex. Apr. 25, 2018) (awarding 33.3% of $100 million settlement); *Marcus*, 2017 WL 6590976, at *6 (awarding 30% of $97.5 million settlement).

Third, well regarded empirical studies also support the overall reasonableness of the requested 25% percentage fee.  In a study by Professors Theodore Eisenberg, of Cornell Law School, and Geoffrey Miller, of New York University, of attorneys' fees awarded in class action settlements from 1993 to 2008, the average fee in securities settlements was 23% and the median was 25%.  *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 248, 262 (2010), Ex. 10.   For settlements between $8.7 million and $14.3 million, the average fee was 23.8% and the median was 25%, with a standard deviation of 8.1.  *Id*. at 265.  Similarly, in a study by Professor Brian Fitzpatrick, Vanderbilt Law School, of every federal class action settlement in 2006 and 2007,

Professor Fitzpatrick found that the average fee award in securities settlements was 24.7% and the median was 25%.  *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 835 (2010), Ex. 11.  Additionally, a recent analysis by NERA Economic Consulting of securities class action settlements found that during 2014-2018, the median attorneys' fee award was 25% for settlements of between $10 million and $25 million.  *See* Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review*, at 41 (NERA Jan. 29, 2019), Ex. 2.

In sum, the percentage fee requested here is reasonable and comparable to percentage fee awards made within the Fifth Circuit and in connection with similar settlements.

### B.   The Requested Attorneys' Fees Are Reasonable Applying the Lodestar Method

Where a court determines attorneys' fees based on the percentage method, the court must "cross-check" the proposed fee for reasonableness by considering counsel's lodestar and the other considerations set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ("*Johnson*").  *See Dell*, 669 F.3d at 642-44 ("we endorse the district courts' continued use of the percentage method cross-checked with the *Johnson* factors"); *The Erica P. John Fund, Inc*., 2018 WL 1942227, at *13 ("A court is to apply a lodestar calculation as a cross-check of the percentage method.").  A court may also determine reasonable attorneys' fees in the first instance by using the lodestar method and applying the *Johnson* factors.  *See Dell*, 669 F.3d at 644.  In the present case, the lodestar method – whether used directly or as a "cross-check" on the percentage method – strongly supports the reasonableness of the requested fee.

Under the lodestar method, "the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying

an upward or downward multiplier." *Dell,* 669 F.3d at 642-43.  In securities class actions, fees representing multiples above the lodestar are typically awarded to reflect contingency fee risks and other relevant factors.  Here, counsel is asking for no multiplier.

Plaintiffs' Counsel spent more than 6,196 hours of attorney and other professional support time prosecuting this Action through March 15, 2019.  *See* ¶101, Exs. 4-6.  Based on Plaintiffs' Counsel's hourly rates, the total lodestar is $3,321,021.00.[5]  *See id.*  This lodestar is a function of the vigorous prosecution of the case, as described in the Gardner Declaration, which included a detailed investigation, filing of a comprehensive Complaint, extensive motion practice on Defendants' motion to dismiss the Complaint, a motion for class certification, and the extensive efforts undertaken during discovery.  The hourly rates of Plaintiffs' Counsel here range from $650 to $975 for partners, $600 to $675 for of counsels, and $410 to $675 for staff attorneys and associates.  *See* Exs. 4-6.  Plaintiffs' Counsel's blended hourly rate for all attorneys' is $571. ¶100.

It is respectfully submitted that the hourly rates used in Plaintiffs' Counsel's lodestar calculation are reasonable in light of prevailing market rates for lawyers with comparable levels of experience and expertise in securities litigation and other complex class action litigation.  *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* 851 F. Supp. 2d 1040,

---

[5] The Supreme Court and courts in this Circuit have approved the use of current hourly rates, rather than historical rates, to calculate base lodestar figures in order to compensate counsel for the delay in receiving payment.  *See Missouri v. Jenkins,* 491 U.S. 274, 284 (1989); *Leroy v. City of Houston,* 831 F.2d 576, 584 (5th Cir. 1987) ("current rates may be used to compensate for inflation and delays in payment"); *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 586 F. Supp. 2d 732, 763 (S.D. Tex. 2008) ("One accepted method of compensating for a long delay in paying for attorneys' services is to use their current billing rates in calculating the lodestar").

1087-88 (S.D. Tex. 2012) (an attorneys' hourly rates should be judged in relation to "prevailing market rates for lawyers with comparable experience and expertise' in complex class action litigation," and "[a]n attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested").  Lead Counsel submits that Plaintiffs' Counsel's rates are less than, or comparable to, those used by peer defense-side law firms litigating matters of similar magnitude.  Sample defense firm rates in 2018, gathered by Labaton Sucharow from bankruptcy court filings nationwide, often exceed these rates.  *See* Decl. ¶100; Ex. 7 (table aggregating hourly rates of more than a dozen defense firms, including several firms with a strong presence in Texas).  Additionally, Labaton Sucharow's rates were recently approved in *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv-00548-KPE, slip op. at 3 (S.D. Tex. Oct. 11, 2018) (Ex. 9) (awarding 20% fee to plaintiffs' counsel in connection with $22.5 million settlement), and in *In re KBR, Inc. Sec. Litig.,* Case No. 4:14-cv-01287, slip op. at 2 (Ex. 9) (awarding 25% fee to plaintiffs' counsel in connection with $10.5 million settlement).

The requested 25% fee, which would amount to $2,750,000 (before interest), would represent a fractional or "negative" multiplier of approximately 0.83 (83%) of Plaintiffs' Counsel's total lodestar.  Stated differently, the requested fee would be ***less than*** the value of the time incurred by Plaintiffs' Counsel in the prosecution and resolution of this litigation.  Given that lodestar multipliers between 2 and 4.5 are commonly awarded in complex class actions with substantial contingency risks, the negative multiplier of approximately 0.83 requested here strongly supports the reasonableness of the requested fee.  *See, e.g.*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007) ("The average range of multipliers applied to other class

actions has been from 1.0 to 4.5.  The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5.") (citation omitted).  Courts have noted that a percentage fee that falls below counsel's lodestar strongly supports the reasonableness of the award.  *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request.").

In sum, whether calculated as a percentage of the fund recovered or under the lodestar method, it is respectfully submitted that the requested fee is within the range of fees awarded by courts within the Fifth Circuit in securities class actions.  Additionally, as set forth below, a review of the factors established by the Fifth Circuit in *Johnson* demonstrates that the requested fee would be fair and reasonable.

## III.   THE FACTORS CONSIDERED BY COURTS WITHIN THE FIFTH CIRCUIT SUPPORT THE REASONABLENESS OF THE REQUESTED FEE

The Fifth Circuit has set forth the following criteria for courts to consider when reviewing a request for attorneys' fees in a common fund case:

> (1) The time and labor required…[;] (2) The novelty and difficulty of the questions involved…[;] (3) The skill requisite to perform the legal service properly…[;] (4) The preclusion of other employment by the attorney due to acceptance of the case…[;] (5) The customary fee…[;] (6) Whether the fee is fixed or contingent…[;] (7) Time limitations imposed by the client or the circumstances…[;] (8) The amount involved and the results obtained…[;] (9) The experience, reputation, and ability of the attorneys…[;] (10) The "undesirability" of the case…[;] (11) The nature and length of the professional relationship with the client…[; and] (12) Awards in similar cases.[6]

[6] Two of the *Johnson* factors – the "time limitations imposed by the client or the circumstances" and the "nature and length of [counsel's] professional relationship with the

*Johnson*, 488 F.2d at 717-19; *see also Dell*, 669 F.3d at 642 n.25 (reiterating *Johnson* factors);

*Billitteri v. Sec. Am., Inc.*, No. 3:09-CV-01568-F, 2011 WL 3585983, at *3 (N.D. Tex. Aug. 4, 2011) (same).[7]   In addition, Courts may consider additional factors, such as (1) public policy considerations, (2) plaintiffs' approval of the fee, and (3) the reaction of the class.   Consideration of all of these factors supports the conclusion that the fee requested here is fair and reasonable.

### A.    The *Johnson* Factors Support the Fairness and Reasonableness of the Requested Fee

#### 1.    The Time and Labor Required

The time and effort expended by Plaintiffs' Counsel in prosecuting this Action and achieving the Settlement show that the requested fee is justified.   As set forth in greater detail in the Gardner Declaration, Plaintiffs' Counsel:

- conducted an extensive factual investigation, which included a thorough review of publicly available information from sources such as SEC filings and public reports and news articles; interviews with numerous former RAC employees and other individuals with relevant knowledge; and consultation with experts on damages and accounting issues (¶18);

- drafted and filed a detailed amended Complaint (¶¶17-24);

- successfully opposed Defendants' motion to dismiss the Complaint, which included briefing on Defendants' objection to the Magistrate Judge's Amended Report and Recommendation (¶¶25-35);

- moved for class certification (¶¶37-46);

---

client" are not relevant in this case.  *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 676 (N.D. Tex. 2010) ("not every factor need be necessarily considered"); *Schwartz*, 2005 WL 3148350, at *28 ("The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case.").

[7] The *Johnson* factors are very similar to those set forth in TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT Rule 1.04(b).

- engaged in extensive discovery, including Lead Counsel's analysis of approximately 420,000 pages of documents produced by Defendants and third-parties, and consulting with experts in the fields of market efficiency, loss causation, and accounting (¶¶48-61);

- took the deposition of Defendants' class certification expert and defended five depositions, including those of Plaintiffs, Plaintiffs' investment managers, and Plaintiffs' class certification expert (¶¶39, 56); and

- drafted mediation statements and engaged in extensive mediation efforts with former federal judge Layn Phillips (¶¶62-67).

As noted above, Plaintiffs' Counsel expended more than 6,196 hours investigating, prosecuting and resolving this Action with a total lodestar value of $3,321,021.00. The substantial time and effort devoted to this case by Plaintiffs' Counsel, and their efficient and effective management of the litigation, was critical to obtaining the favorable result achieved by the Settlement, and this factor supports the fee request.

### 2. The Novelty and Difficulty of the Issues

Courts have long recognized that securities class actions are complex and difficult and that "Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult." *OCA*, 2009 WL 512081, at *21. *See also Schwartz*, 2005 WL 3148350, at *29 ("Federal Securities class action is notably difficult and notoriously uncertain."). Here, there were many difficult questions presented in the litigation, including establishing the falsity of Defendants' statements and proving scienter and loss causation. Moreover, even if Plaintiffs were successful in proving liability at trial, there were complex issues concerning loss causation and damages. ¶¶71-84.

The significant risks to establishing liability and damages are detailed in the Gardner Declaration. *Id.* In summary, Defendants had challenging defenses with respect to the element of falsity. They would have argued that prior to February 2016, RAC reported nothing more

than factual information regarding the number of stores in which SIMS was operating, along with cautionary language regarding the potential impact of SIMS.  Thus, the market purportedly knew that the Company was beginning the rollout of SIMS and that it was operating in a small number of stores.  Likewise, regarding the alleged misstatements made in 2016, including fact-based statements about the number of stores in which SIMS was operating in and opinion-based statements about the SIMS rollout, Defendants would likely argue that they were truthful and satisfied the standard set forth in *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct 1318, 1332-33 (2015).  ¶¶72-73.

Defendants also had numerous strong defenses to scienter, including that: (i) none of the traditional hallmarks of scienter, such as insider trading, are present in this case given that neither of the Individual Defendants sold stock during the Class Period; (ii) the only motive that Plaintiffs have advanced – that RAC rushed the rollout of SIMS in order to avoid an accounting write down related to the development of SIMS – is inconsistent with GAAP; (iii) Plaintiffs cannot point to any evidence that anyone at RAC ever thought that they should force a rollout of SIMS to avoid writing off the cost of developing the system; and (iv) there is no evidence that either of the Individual Defendants ever had any information that contradicted anything they said at the time.  ¶¶74-75.  These defenses required diligent and rigorous advocacy on behalf of Lead Counsel.

Even if Plaintiffs defeated such arguments and established liability, they faced substantial hurdles in establishing loss causation and damages.  As detailed in the Gardner Declaration, with respect to damages, Defendants would have contended that: (i) no damages were recoverable for the four alleged corrective disclosures at issue in this case because the alleged disclosures were

not corrective of any alleged misstatement; (ii) the Company's alleged disclosures on the corrective disclosure days consisted of press releases and earnings announcements where a variety of information—including many pieces of information unrelated to the alleged fraud—was disclosed to the market and impacted RAC's stock price; and (iii) "disaggregating" the impact of this "confounding," non-fraud related information from the impact of the information at issue cannot be done with a reasonable degree of scientific accuracy, and that even if it could, it would substantially reduce damages. *Id*. ¶¶77-84.  These difficult issues required complex and sophisticated analysis by Lead Counsel.

Furthermore, even if Plaintiffs had prevailed in these challenges at summary judgment and trial, success would have been challenged in post-trial motions and on appeal.  Accordingly, if not settled, the Settlement Class in this case faced the considerable risk of years of additional litigation with no guarantee of a greater recovery.  Lead Counsel worked diligently to achieve a significant result for the Settlement Class in the face of these very real risks.  Under these circumstances, the requested fee is fully appropriate.

### 3.  The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation and Ability of the Attorneys

Under these two *Johnson* factors, the Court should consider the skill required to litigate the Action and "the experience, reputation and ability of the attorneys" involved.  *Johnson*, 488 F.2d at 718-19.  Considerable litigation skills were required in order for Lead Counsel to achieve the Settlement in this Action.  As noted above, this is a complex case involving difficult factual and legal issues on the merits, and it was subjected to an extremely rigorous defense.  Given the many contested issues, it took highly skilled counsel to represent the class and bring about the substantial recovery that has been obtained.

Labaton Sucharow is among the most experienced and skilled securities litigation law firms in the country.  Since the passage of the PSLRA, Labaton Sucharow has been approved by courts to serve as lead counsel in numerous securities class actions throughout the United States, and in some of the most significant federal securities class actions in history.  *See* Ex. 4-C.  Lead Counsel submits that the skill of the Firm's attorneys, the quality of its attorneys' efforts in the litigation, the Firm's substantial experience in securities class actions, and the Firm's commitment to the litigation were key elements in enabling Lead Counsel to negotiate this Settlement.

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should also be taken into consideration in assessing the quality of counsel's performance.  *See The Erica P. John Fund, Inc*., 2018 WL 1942227, at *11 (finding that the "very high quality of defense counsel's work" was a "substantial factor" in assessing the performance of plaintiffs' counsel); *Schwartz*, 2005 WL 3148350, at *30 ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation").  Here, Defendants were represented by Baker Botts L.L.P., a prestigious and experienced defense firm.  Notwithstanding this formidable opposition, Lead Counsel achieved a favorable settlement.

### 4.  The Preclusion of Other Employment

The considerable amount of time that Plaintiffs' Counsel spent prosecuting the Action was time that they could not spend pursuing other matters.  Plaintiffs' Counsel dedicated this time and effort to the Action despite the very significant risks of no recovery and while deferring any payment of their fees and expenses until a settlement was reached.  This factor also supports

16

the requested fee.  *See, e.g.*, *The Erica P. John Fund, Inc.*, 2018 WL 1942227, at *11; *Burford v. Cargill, Inc.*, No. 05-0283, 2012 WL 5471985, at *3 (W.D. La. Nov. 8, 2012).

### 5.       The Customary Fee and Awards in Similar Cases

As noted above, the fee requested by Lead Counsel is well within the range awarded in similar cases.  *See* Section II above.

### 6.       The Contingent Nature of the Fee

The fully contingent nature of the fee requested by Lead Counsel and the substantial risks posed by the litigation are also important factors supporting the requested fee.  "Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees."  *Schwartz*, 2005 WL 3148350, at *31.

As noted above and in the Gardner Declaration, Plaintiffs' Counsel faced significant challenges to establishing liability and damages in this Action.  Defendants vigorously contested the elements of scienter, falsity, loss causation and damages and would have continued to do so through summary judgment, trial, and any appeals.  In the face of these very real uncertainties regarding the outcome of the case, Plaintiffs' Counsel prosecuted this Action on a wholly contingent basis, knowing that the litigation could last for years and would require devotion of a substantial amount of attorney time and a significant advance of litigation expenses with no guarantee of compensation or reimbursement.   Plaintiffs' Counsel's assumption of this contingency fee risk, and the extensive litigation of the Action in the face of these risks, strongly supports the reasonableness of the requested fee.  *See Billitteri*, 2011 WL 3585983, at *7 (the contingent nature of counsel's fee was "particularly relevant considering the difficulty presented by the facts and legal questions in this case and the very real risk of obtaining no recovery at

17

all"); *OCA*, 2009 WL 512081, at *22 ("the risk plaintiffs' counsel undertook in litigating this case on a contingency basis must be considered in its award of attorneys' fees, and thus an upward adjustment is warranted").

### 7.    The Amount Involved and the Results Achieved

Another *Johnson* factor is the "overall degree of success achieved."  *Roussel v. Brinker Int'l, Inc.*, No. H-05-3733, 2010 WL 1881898, at *3 (S.D. Tex. Jan. 13, 2010), *aff'd,* 441 F. App'x 222 (5th Cir. 2011).  Here, Lead Counsel has achieved a substantial recovery of $11 million for the benefit of the Settlement Class, which represents a significant portion of likely recoverable damages.  ¶84.  Indeed, according to Lead Counsel's consulting damages expert, maximum aggregate damages in the Action are approximately $148 million, once pre-class period gains are excluded.[8]  This figure also assumes that all of the corrective disclosures set forth in the Complaint are established at trial and that the abnormal stock price drops on each alleged corrective disclosure would not need to be disaggregated.  The $11 million Settlement, therefore, represents a recovery of approximately 7.4% of estimated damages—a favorable recovery, particularly in light of the attendant litigation risks.  Given that Defendants would have likely pointed to confounding news that was released on the corrective disclosure dates, Lead Counsel's consulting damages expert also performed a disaggregation analysis to remove the effects of potentially confounding information, reducing estimated damages to approximately $95 million.  Under this scenario, the Settlement would recover approximately 11.6% of potential damages.  If one or more of the alleged corrective disclosures were dismissed on

---

[8] Including pre-class period gains would add another approximately $72 million in damages.

summary judgment, the class's damages would be further reduced.  ¶84; *see also* Lead Plaintiff's Motion for Approval of Class Action Settlement and Plan of Allocation and Supporting Memorandum of Law, at §I.C.5.  The result achieved, in light of the substantial risks, is significant and supports the requested fee.

### 8.    The Undesirability of the Case

While Lead Counsel did not consider this case to be "undesirable," there was no government investigation by the Department of Justice or the SEC, no Restatement by the Company, and no admission by Defendants, and therefore, there was no roadmap for Plaintiffs to follow.  Moreover, there were substantial risks in financing and prosecuting this case, and Lead Counsel knew that they would have to spend substantial time and money without any assurance of being compensated for their efforts.  Thus, the "undesirability" of the case also weighs in favor of the requested fee.  *See, e.g.*, *Schwartz*, 2005 WL 3148350, at *27 ("Class Action cases that carry with them elevated risks, such as the present litigation and that also require lengthy investigation through informal discovery, not to mention a possibility of no recovery, certainly speaks to the undesirability of a case."); *Billitteri*, 2011 WL 3585983, at *8 (where a case "raised particularly difficult issues," including the risk of "no recovery whatsoever," this factor supported an increase in the fee); *Braud v. Transp. Serv. Co. of Ill.*, No. 05-1898, 2010 WL 3283398, at *13 (E.D. La. Aug. 17, 2010) (given the "risk of non-recovery" and the burdens of "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee," the Court found that "undesirability in this case warrants an increase in the fee award").

**B.**     **Other Factors Considered by Courts Further**
          <u>**Support the Requested Fee as Fair and Reasonable**</u>

In addition to the *Johnson* factors, Courts may consider certain other factors in determining the appropriate fee in a class action.  *See Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991).

### 1.     Public Policy Considerations Support the Requested Fee

A strong public policy concern exists for rewarding firms for bringing successful class action securities litigation.  The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman*, 472 U.S. at 310 (citation omitted); *see also Tellabs*, 551 U.S. at 313.  Accordingly, public policy favors granting Lead Counsel's requested fee and expense application here.  *See Jenkins*, 300 F.R.D. at 309 ("Public policy concerns—in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—support the requested fee.").

### 2.     Lead Plaintiff Has Approved the Requested Fee

Lead Plaintiff Oklahoma Firefighters is a sophisticated institutional investor that assisted Lead Counsel with the litigation of the Action and has a sound basis for assessing the reasonableness of the fee request.  *See* Ex. 1 ¶¶2-6.  Lead Plaintiff fully supports and approves the fee request.  *See id*.

The PSLRA was intended to encourage institutional investors like Lead Plaintiff to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions

of plaintiff's counsel."  H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N.

730, 731 (1995).   Congress believed that these institutions would be in the best position to

monitor the prosecution and to assess the reasonableness of counsel's fee requests.  Accordingly,

Lead Plaintiff's endorsement of the fee request in this PSLRA action supports its approval.  *See,*

*e.g., In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *8

(S.D.N.Y. Nov. 7, 2007) ("public policy considerations support the award in this case because

the Lead Plaintiff . . . – a large public pension fund – conscientiously supervised the work of lead

counsel and has approved the fee request"); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d

426, 442 (D.N.J. 2004) ("[s]ignificantly, the Lead Plaintiffs, both of whom are institutional

investors with great financial stakes in the outcome of the litigation, have reviewed and approved

Lead Counsel's fees and expenses request").

### 3.   The Reaction of the Settlement Class to Date
### Supports the Requested Fee

The reaction of the Settlement Class to date also supports the requested fee.  As of

March 26, 2019, the Claims Administrator has disseminated the Notice to 31,071 potential

Settlement Class Members and nominees informing them of, among other things, Lead

Counsel's intention to apply to the Court for an award of attorneys' fees not to exceed 25% of

the Settlement Fund and payment of up to $440,000 in expenses.  *See* Ex. 3-A at ¶¶4, 38.  To

date, no objections have been received.  ¶130.  Lead Counsel will address any future objections

in their reply papers to be filed with the Court on April 26, 2019.

## IV.   THE REQUESTED EXPENSES ARE REASONABLE AND
## WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's fee application includes a request for payment of Plaintiffs' Counsel's

litigation expenses that were reasonably incurred and necessary to the prosecution of this Action. These expenses are properly recovered by counsel. *See The Erica P. John Fund, Inc.*, 2018 WL 1942227, at *13 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement.") (quoting *Billitteri*, 2011 WL 3585983, at *10). As set forth in the Gardner Declaration, Plaintiffs' Counsel incurred $362,572.91 in litigation expenses on behalf of the class in the prosecution of the Action. ¶¶16-125, Exs. 4-5.

The largest component of expenses related to experts. Specifically, $221,109.39, or approximately 61% of total expenses, was expended on experts and consultants. ¶119, Ex. 4-B. Lead Counsel retained experts in the fields of damages, loss causation, and accounting to assist in the prosecution and resolution of the Action. These experts were valuable for the analysis and development of the claims and in connection with mediation. As detailed in the Gardner Declaration, Lead Counsel's loss causation and damages expert prepared two expert reports in connection with the class certification motion, assisted Lead Counsel during the mediation and settlement negotiations with Defendants, and assisted Lead Counsel with the development of the proposed Plan of Allocation. Lead Counsel also consulted with an accounting expert when preparing the Complaint and in the course of discovery. Lead Counsel utilized these experts in order to efficiently frame the issues in the Action, gather relevant evidence, make a realistic assessment of provable damages, and structure a resolution of the Action.

Lead Counsel was also required to work late hours and travel in connection with court appearances, witness meetings, and depositions. Work-related transportation, lodging, and meal costs totaled approximately $22,046.39, or approximately 6% of aggregate expenses. *Id*. ¶121, Ex. 4-B. Any first class airfare has been reduced to economy rates.

Plaintiffs' Counsel also incurred expenses in connection with the mediation, totaling $29,392.50 (or approximately 8% of total expenses).  ¶122; Ex. 4-B.

Another large component of the litigation expenses was for litigation support services, which were needed to host the electronic documents produced in the Action and to produce Plaintiffs' records to Defendants.  These charges amounted to $38,779.29, or approximately 11% of total expenses.  ¶120, Ex. 4-B.  The expenses here also include the costs of electronic factual and legal research ($16,614.78 or approximately 5% of total expenses).  *Id.* ¶123.  These are the costs of computerized factual and legal research services such as LEXIS/Nexis and Westlaw.  It is standard practice for attorneys to use LEXIS/Nexis and Westlaw to assist them in researching legal and factual issues.

The other expenses for which Lead Counsel seeks payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients who are billed by the hour.  These expenses include, among others, duplicating costs, transcription costs, long distance telephone and conference call charges, and filing fees.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for payment of litigation expenses in an amount not to exceed $440,000.  The amount of litigation expenses requested, $362,572.91, is well below the amount listed in the Notice and, to date, there has been no objection to the request for expenses.

## V.      PLAINTIFFS REQUEST REASONABLE COSTS AND EXPENSES PURSUANT TO THE PSLRA

Lastly, in connection with their request for payment of litigation expenses, Lead Counsel also seeks reimbursement of $5,090.00 for the costs and expenses of Plaintiffs in connection with their efforts to oversee and assist Lead Counsel with the litigation of the Action.  Specifically,

Oklahoma Firefighters seeks reimbursement in the amount of $2,000.00 for the time it dedicated to the litigation efforts.  *See* Ex. 1 ¶¶4-7.  Hollywood ERF seeks reimbursement in the amount of $5,090.00 for the time it dedicated to the litigation, as well as reimbursement for the fees it paid to its outside general counsel in connection with participating in the Action and ensuring that its efforts were consistent with Hollywood ERF's fiduciary and other obligations.  *See* Ex. 8 ¶¶6-7.

The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made.  15 U.S.C. §78u-4(a)(4).  Although Hollywood ERF was not appointed a lead plaintiff, its efforts at all times were on behalf of the proposed class and it worked diligently to further the class's interests in the Action.  *See Miller v. Global Geophysical Servs., Inc*., Civil Action No. 14-cv-0708, slip op. at 2 (S.D. Tex. Jan. 14, 2016) (approving request that included $15,000 for lead plaintiff and named plaintiffs) (Ex. 9); *Dusek v. Mattel, Inc*., Master File No. CV-99-10864-MRP (CWx), 2003 WL 27380800, at *8 (C.D. Cal. Sept. 29, 2003) (awarding lead plaintiffs' time and expenses, pursuant to the PSLRA, as well as awarding named plaintiffs reimbursement for their time and expenses as a result of defendants' depositions and discovery taken of them).

Plaintiffs Oklahoma Firefighters and Hollywood ERF each took active roles in the litigation and have been fully committed to pursuing the class's claims since they became involved in the litigation.  For instance, Plaintiffs engaged in time-consuming discovery efforts to produce documents responsive to Defendants' discovery requests.  In addition, they prepared for and testified at depositions in connection with the class certification motion.  Lead Plaintiff also attended the August 2018 mediation in New York.  *See* Ex. 1 ¶4; Ex. 8 ¶4.  These efforts required Plaintiffs to dedicate time and resources to the Action that they would have otherwise

devoted to their regular duties.  The requested reimbursement amounts are based on the hours that Plaintiffs' committed to these activities.  *Id.*

Numerous courts have approved reasonable awards to compensate plaintiffs for the time and effort they spent on behalf of a class.  *See, e.g.*, *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv-00548-KPE, slip op. at 3 (S.D. Tex. Oct. 11, 2018) (awarding class representatives $4,916.60, $2,880.00, and $22,127.46 for reimbursement of reasonable costs and expenses); *In re KBR, Inc. Sec. Litig.,* Case No. 4:14-cv-01287, slip op. at 2 (awarding two lead plaintiffs an aggregate amount of $13,108.64 for costs and expenses); *In re Tetra Techs., Inc. Sec. Litig.*, No. 4:08-CV-00965, slip op. (S.D. Tex. Sept. 29, 2010) (awarding lead plaintiff $3,640.20 for costs and expenses) (Ex. 9); *Simons v. Dynacq Healthcare, Inc.*, No. H-03-5825, slip op. (S.D. Tex. Jan. 10, 2007) (awarding two lead plaintiffs an aggregate amount of $7,077 for costs and expenses) (Ex. 9).

Accordingly, it is respectfully submitted that the amounts sought by Plaintiffs are reasonable and should be granted.

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court award (i) attorneys' fees in the amount of 25% of the Settlement Fund, *i.e.*, $2,750,000, plus interest incurred at the same rate as the Settlement Fund; and (ii) payment of litigation expenses totaling $362,572.91, plus interest incurred at the same rate as the Settlement Fund; and (iii) reimbursement of $2,000.00 to Lead Plaintiff and $3,090.00 to Hollywood ERF.[9]

---

[9] A proposed order will be submitted with Lead Counsel's reply papers, after the deadline for objecting has passed.

Dated:  March 29, 2019

Respectfully submitted,

By: */s/ Jonathan Gardner*

Jonathan Gardner (*pro hac vice*)
Marisa N. DeMato (*pro hac vice*)
Christine M. Fox (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jgardner@labaton.com
mdemato@labaton.com
cfox@labaton.com

*Lead Counsel for Oklahoma Firefighters
Pension and Retirement System, City of
Hollywood Employees' Retirement Fund, and the
Proposed Class*

**HICKS DAVIS WYNN, PC**
Pamela C. Hicks
State Bar No. 24007002
Scott R. Davis
State Bar No. 24059660
3700 Buffalo Speedway, Ste. 520
Houston, Texas 77098
Telephone: 713-589-2240
phicks@hdwlegal.com
sdavis@hdwlegal.com

*Liaison Counsel for Oklahoma Firefighters
Pension and Retirement System, City of
Hollywood Employees' Retirement Fund, and the
Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 29th day of March 2019, I caused the foregoing to be electronically filed with Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

By: *<u>/s/ Jonathan Gardner</u>*
JONATHAN GARDNER

**Mailing Information for a Case 4:16-cv-00978-ALM-KPJ**
*Hall v. Rent-A-Center, Inc. et al.*
**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Christine M Fox**
  cfox@labaton.com,acarpio@labaton.com
- **Barry C Barnett**
  bbarnett@susmangodfrey.com,kpotts@susmangodfrey.com,ecf-0949b38b345a@ecf.pacerpro.com,ecf-e82efbe3cf6a@ecf.pacerpro.com
- **Eric J Belfi**
  ebelfi@labaton.com,drogers@labaton.com,lmehringer@labaton.com,jalayo@labaton.com,electroniccasefiling@labaton.com
- **Willie Charles Briscoe**
  wbriscoe@thebriscoelawfirm.com,bthompson@thebriscoelawfirm.com
- **Guillaume Orson Buell**
  gbuell@tenlaw.com
- **Marisa N DeMato**
  mdemato@labaton.com,fmalonzo@labaton.com
- **Jonathan Gardner**
  jgardner@labaton.com,lmehringer@labaton.com
- **Benjamin Allen Geslison**
  ben.geslison@bakerbotts.com
- **Lionel Z Glancy**
  lglancy@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com
- **R. Dean Gresham**
  dean@stecklerlaw.com,tonja@stecklerlaw.com
- **Ross Kamhi**
  rkamhi@labaton.com,fmalonzo@labaton.com
- **Christopher Joseph Keller**
  ckeller@labaton.com,drogers@labaton.com,lmehringer@labaton.com,jalayo@labaton.com,electroniccasefiling@labaton.com
- **Elton Joe Kendall**
  jkendall@kendalllawgroup.com,administrator@kendalllawgroup.com
- **Francis Paul McConville**
  fmcconville@labaton.com,kgutierrez@labaton.com,drogers@labaton.com,9849246420@filings.docketbird.com,jalayo@labaton.com,electroniccasefiling@labaton.com
- **Christopher L Mooney**
  cmooney@labaton.com,kgutierrez@labaton.com,4320686420@filings.docketbird.com,fmalonzo@labaton.com,electroniccasefiling@labaton.com
- **Jessica B Pulliam**
  jessica.pulliam@bakerbotts.com,jessica-pulliam-3502@ecf.pacerpro.com,jeanne.delphenis@bakerbotts.com

- **David Dykeman Sterling**
  david.sterling@bakerbotts.com,leslie.buenzow@bakerbotts.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing).

- (No manual recipients)